In the Matter of the Arbitration between NEW YORK PLAZA BUILDING COMPANY, Respondent, and OPPENHEIM, APPEL, DIXON & CO., Appellant.

In the Matter of the Arbitration between NEW YORK PLAZA BUILDING COMPANY, Respondent, and INTERNATIONAL NICKEL CO., INC., Appellant.

In the Matter of the Arbitration between NEW YORK PLAZA BUILDING COMPANY, Respondent, and SALOMON BROTHERS, INC., Appellant.

First Department, August 29, 1984

**APPEARANCES OF COUNSEL**

*Richard C. Seltzer* of counsel (*Phillip A. Geraci* with him on the brief; *Kaye, Scholer, Fierman, Hays & Handler,* attorneys), for appellants.

*Martin I. Shelton* of counsel (*Shea & Gould,* attorneys), for respondent.

**OPINION OF THE COURT**

FEIN, J.

The New York Plaza Building Company (NYP) owns and operates One New York Plaza. Oppenheim, Appel, Dixon

& Co. (OAD), The International Nickel Co., Inc. (INCO), and Salomon Brothers, Inc. (SB), are tenants in the building. Section 3.04 B of each lease provides that tenants shall pay as additional rent a specified percentage of the annual cost of operation and maintenance of the building in excess of the cost for the base year designated in such lease. Each lease requires that NYP furnish a statement certified by a public accountant concerning such increase in cost for the operating year to which such notice relates. The OAD lease further provides: "Any statement so certified shall constitute a final and binding determination, as between Landlord and Tenant, of the Cost of Operation and Maintenance for the Base Year and for the Operating Year represented thereby unless Tenant shall, within sixty [60] days after the receipt of such statement, question, in writing, the correctness thereof or the propriety of the inclusion therein of any item of expense. Tenant shall have the right, at any time within sixty [60] days after receipt from Landlord of a notice setting forth the Cost of Operation and Maintenance for the Base Year or any Operating Year, to examine the books and records of Landlord with respect to the Cost of Operation and Maintenance for said Year. If any such examination of the books and records of Landlord shall be commenced but shall not be completed within such sixty [60] day period, the time to make such examination shall be extended sufficiently to permit the same to be completed, provided Tenant shall diligently and expeditiously proceed with the same. In the event that any dispute between Landlord and Tenant with respect to any such statement shall not be settled within thirty [30] days after it shall have arisen, said dispute shall be determined by a Certified Public Accountant selected by the parties, or in the event of their inability to agree upon such an accountant within ten [10] days, selected by the American Arbitration Association."

The similar clause in the INCO and SB leases differs (note emphasized portions): "Any statement so certified shall constitute a final and binding determination, as between Landlord and Tenant, of the Cost of Operation and Maintenance for the Base Year or for the Operating Year represented thereby, as the case may be, unless Tenant

shall, within sixty [60] days after the receipt of such statement, question, in writing, the correctness thereof or the propriety of the inclusion therein of any item of expense. *In the event that Tenant shall question any such statement, it shall have the right, at any time within thirty [30] days thereafter, to examine the books* and records of Landlord with respect to the Cost of Operation and Maintenance for the year represented by such statement. In the event that any dispute between Landlord and Tenant with respect to any such statement shall not be settled within [30] days after it shall have arisen, said dispute shall be determined by a Certified Public Accountant selected by the parties, or in the event of their inability to agree upon such an accountant within ten [10] days, by the American Arbitration Association. The determination of the Certified Public Accountant so selected shall be final and binding on both Landlord and Tenant."

### FACTS REGARDING OAD

By letters dated December 22, 1980, NYP notified OAD that the additional rent due for 1979-80 totaled $145,015.32. On January 6, 1981, OAD informed NYP in writing: "As usual, we may choose to exercise our right to examine your books and records to satisfy ourselves as to the propriety and correctness of any item of expense." It does not appear whether OAD actually examined the books. OAD paid the entire sum. A similar procedure was followed respecting the 1980-81 and the 1981-82 certified statements and payment of additional rent.

However, by letter dated April 4, 1983, counsel for OAD stated in writing: "Pursuant to Section 3.04 B of the lease * * * this is to notify you that we dispute certain of your statements of charges * * * for the operating years 1980, 1981 and 1982 * * * If, within the next 30 days, we have failed to resolve these matters, we wish to arbitrate this dispute as provided in the lease." OAD's demand for arbitration followed on May 19, 1983. NYP's proceeding to stay arbitration was instituted by order to show cause returnable June 7, 1983.

### FACTS REGARDING INCO

In substance, the procedure as between NYP and INCO was the same as that between OAD and NYP, covering the

years 1980-81 and 1981-82, except that in each year INCO stated that OAD would make the examination on INCO's behalf. However, in its February 25, 1983 letter forwarding its check for operating escalation for the year 1982 and for February, 1983 rent expenses, INCO added: "As previously written to you (January 12, 1983) *we still will question the items included in 'Operating Escalation' for the year 1982 and have asked Oppenheim, Appel and Dixon to act on our behalf.*" (Emphasis added.)

On April 4, 1983, INCO challenged the additional rent payments for all of the years involved by letter substantially the same as that sent by OAD. In the same form as OAD, INCO's demand for arbitration followed on May 19, 1983. NYP responded by commencing this proceeding to stay arbitration by order to show cause returnable June 7, 1983.

### FACTS REGARDING SB

The factual pattern concerning the years at issue and the correspondence between SB and NYP was substantially the same as that respecting OAD. No challenge was made until SB's letter of April 4, 1983, the text of which was the same as those sent by OAD and INCO, followed by a similar demand for arbitration on May 19, 1983. Similarly, the present action to stay arbitration was begun by order to show cause returnable June 7, 1983.

NYP's petitions to stay arbitration were premised upon the ground that the tenants had not complied with the lease provisions regarding arbitration, which made the landlord's accountants' certified statements of excess maintenance costs and expenses "a final and binding determination * * * unless Tenant shall, within sixty [60] days after the receipt of such statement, question, in writing, the correctness thereof or the propriety of the inclusion therein of any item of expense." Since the April 4, 1983 letters were sent well beyond the 60-day limit for challenging the 1980-81 and 1982 escalation statements, arbitration was required to be stayed. OAD contended that its letters announcing its intention to examine the owner's records presumed a dispute as to those charges and were timely sent within the 60-day period. INCO made a similar claim, noting, in addition, that its February 25, 1983 letter

stated: "we still will question the items * * * for the year 1982". SB's arguments were similar to those of OAD. However, it added that the statements were defective since they failed to disclose the inclusion of legal fees incurred by the landlord in violation of standard accounting practice.

All of the tenants contended that the issues of timeliness and whether this was a condition precedent were for the arbitrator, not the court.

We affirm Special Term's grant of the petition permanently staying arbitration with regard to each tenant, except that we modify with respect to INCO's demand for arbitration concerning the year 1982.

As held in *Matter of County of Rockland (Primiano Constr. Co.)* (51 NY2d 1), in deciding whether to stay or order arbitration, the court must first determine (1) whether a valid agreement to arbitrate exists, (2) whether the issues to be arbitrated fall within the scope of the agreement, and (3) whether the claim is barred by the limitation of time had it been asserted in a State court. The court observed: "This calls for a judicial determination as to whether there is any preliminary requirement or condition precedent to arbitration to be complied with and, if so, whether there has been compliance with such requirement or condition precedent." (*Matter of County of Rockland [Primiano Constr. Co.], supra,* at p 7.) Judicial inquiry ends with the determination of these issues.

In distinguishing between conditions precedent to be passed upon by the court and procedural stipulations to be resolved by the arbitrators, the guiding principle is: "Whether the particular requirement falls within the jurisdiction of the courts or of the arbitrators depends on * * * whether it is in essence prerequisite to entry into the arbitration process or a procedural prescription for the management of that process" (*Matter of County of Rockland [Primiano Constr. Co.], supra,* at p 9).

Where the arbitration clause is limited or narrow, the court is to determine issues of timeliness and notice as conditions precedent to arbitration (*Matter of United Nations Dev. Corp. v Norkin Plumbing Co.,* 45 NY2d 358, 363-364; *Teplitsky v Douglaston Golf Practice Range,* 64 AD2d 578).

It is plain that the arbitration clauses in the respective leases are not broad arbitration clauses covering all disputes. They are narrowly limited to a certified public accountant's resolution of disputes over landlord's statement of excess maintenance costs. The scope of the accountant arbitrator's review is severely limited. Resolution of legal issues is not contemplated. Thus, the court is to determine compliance with any condition precedent to seeking arbitration.

The provision that tenants provide written notice of a challenge or dispute is a condition precedent to arbitration. It requires that the tenant preserve its claim by asserting it. Since a dispute must exist before arbitration can be demanded, written notice is "a prerequisite to entry into the arbitration process" (*Matter of County of Rockland* [*Primiano Constr. Co.*], 51 NY2d, at p 9). Tenants assert that each of the letters advising of the intention to exercise their right to examine the books is a sufficient notice of a dispute. We disagree. Each lease provides that the statement is "a final and binding determination * * * unless Tenant shall, within sixty [60] days after the receipt of such statement, question, in writing, the correctness thereof". The right to examine the books is contained in an independent sentence. Plainly, the right to examine books or the exercise of such right does not import a claim or dispute. Such provision cannot be construed so as to constitute the request for an examination of the books, the assertion of a claim or a dispute concerning the contents of the accountant's statement. Except for INCO's letter of February 25, 1983 ("we still will question the items * * * for the year 1982"), the facts upon which the tenants rely to show that NYP had notice there were disputes regarding the statements do not constitute the requisite timely "question in writing" as to the "correctness * * * [or] inclusion * * * of any item of expense." Nor is landlord estopped because it complied with the tenants' request for information, and attended meetings to discuss the statements. This is not written notice of a dispute. Except for INCO's letter, no such notice ever was given until the belated April, 1983 letters.

Providing access to the books and records upon request does not evidence a dispute. Review of such records may

have answered the tenants' questions. Despite such access, the tenants never preserved their claims by written notice of a dispute. There is no evidence of any waiver.

Manifestly, the only matters intended to be arbitrated by the accountant arbitrator were disputes over the "correctness" or the "propriety of the inclusion * * * of any item of expense" in the landlord's certified accountant's statements of the cost of operation and maintenance. This narrow clause hardly contemplated determination by the accountant of the mixed issues of fact and law tendered by the tenants (1) whether there was an arbitrable dispute within the meaning of the lease, (2) whether the landlord's accountant's statement had become "final and binding" under the terms of the lease, (3) whether the reservation of the right to examine the books constituted notice of a dispute, (4) whether the requirement to give notice of a dispute within 60 days is a condition precedent to the institution of arbitration, (5) whether landlord is equitably estopped because it made its books and records available and discussed their contents with the tenants, and (6) whether there was fraudulent concealment in the landlord's accountant's statements.

In our view, these are issues for resolution by the court under the rules laid down in *Rockland* (*supra*).

Applying those rules, we conclude that except for INCO's claim for 1982, there was no agreement to arbitrate. The conditions precedent to arbitration were not met. On this record we find no equitable estoppel barring the landlord from relying on the express provisions of the leases making the statements "final and binding". Nor do we find fraudulent concealment as claimed by SB, in the failure of landlord's statements to separately label or identify "legal fees" in the summaries accompanying the 1980 and 1981 statements. There is no evidence of fraudulent intent by the landlord or reasonable reliance by the tenants that legal fees were not included in the "other items" line of the statements.

The order, Supreme Court, New York County (Alvin Klein, J.), entered October 21, 1983 granting the petition of New York Plaza Building Company to stay arbitration with Oppenheim, Appel, Dixon & Co. permanently, should be affirmed, with costs.

The order, Supreme Court, New York County (Alvin Klein, J.), entered October 21, 1983 granting the petition of New York Plaza Building Company to stay arbitration with Salomon Brothers, Inc., permanently, should be affirmed, with costs.

The order, Supreme Court, New York County (Alvin Klein, J.), entered October 21, 1983 granting the petition of New York Plaza Building Company to stay arbitration with The International Nickel Co., Inc., permanently, should be modified only to the extent of directing arbitration respecting the 1982 escalation statement furnished by the petitioner to The International Nickel Co., Inc., and otherwise affirmed, without costs.

SANDLER, J. P., ROSS, CARRO and MILONAS, JJ., concur.

Order, Supreme Court, New York County, entered on October 21, 1983, which granted the petition of petitioner-respondent to stay arbitration with Oppenheim, Appel, Dixon & Co. permanently, is affirmed. New York Plaza Building Company shall recover of Oppenheim, Appel, Dixon & Co. $50 costs and disbursements of this appeal.

Order, Supreme Court, New York County, entered on October 21, 1983, which granted the petition of petitioner-respondent to stay arbitration with Salomon Brothers, Inc., permanently, is affirmed. New York Plaza Building Company shall recover of Salomon Brothers, Inc., $50 costs and disbursements of this appeal.

Order, Supreme Court, New York County, entered on October 21, 1983, which granted the petition of petitioner-respondent to stay arbitration with The International Nickel Co., Inc., permanently, is modified only to the extent of directing arbitration respecting the 1982 escalation statement furnished by the petitioner to The International Nickel Co., Inc., and otherwise affirmed, without costs and without disbursements.